UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN N. G., | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )   *No. 2:20-cv-00102-JAW* |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) relied on testimony of a vocational expert (VE) in response to hypothetical questions that did not accurately convey his residual functional capacity (RFC) and (ii) erroneously evaluated the opinion evidence of record. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 18-23. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, Finding 1, Record at 671; that, through his date last insured (DLI), he had the severe impairments of lumbar spine disorder, gastrointestinal disorder, affective disorder, anxiety-related disorder, and substance addiction disorder, Finding 3, *id.*; that, through his DLI, he had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b); specifically, that he could have lifted/carried up to 20 pounds occasionally and 10 pounds frequently, sat for up to six hours in an eight-hour workday, and stood/walked for up to six hours in an eight-hour workday but that he needed to be able to change positions hourly for five minutes, remaining on-task in the alternative position, could only have engaged in occasional climbing, balancing, stooping, kneeling, crouching, or crawling, to address the potential for pain exacerbation, needed to be able to take an hourly five-minute break with no impact on satisfying daily production expectations, was limited to performing simple work with no public interaction and only occasional interaction with supervisors, could have occasionally interacted with coworkers but could not have engaged in team/tandem collaborative-type work (he could work around coworkers but could not work together with them on a project), and was able to make simple work-related decisions and adapt to simple changes in a routine work setting, Finding 5, *id.* at 673-74; that, through his DLI, considering his age (52 years old, defined as an individual closely approaching advanced age, on his DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could have performed, Findings 7-10, *id.* at 680-81; and that he, therefore, had not been disabled at any time from October 1, 2013, his amended alleged onset date of disability, through his DLI, December 31, 2015, Finding 11, *id.* at 682. The Appeals Council declined to assume jurisdiction of the case following remand, *id.* at 657-60, making the decision

the final determination of the commissioner, 20 C.F.R. § 404.984(a), (b)(2); *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Reliance on Assertedly Flawed VE Testimony

The plaintiff first seeks remand on the basis that the ALJ relied on VE testimony that did not reflect the full panoply of his restrictions. *See* Statement of Errors at 18-21; *see also, e.g.*, *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a VE are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record). I find no error.

The ALJ initially asked the VE whether a person with an RFC matching that he ultimately found – except that he did not include the need to change positions hourly for five minutes, remaining on-task in the alternative position – could perform the jobs of mail sorter, packager, and

3

assembler. *Compare* Record at 744-45 (incorporating by reference *id*. at 703) *with* Finding 5, *id*. at 673-74. The VE testified that such a person could perform those jobs. *See id*. at 745. The ALJ then asked the VE for three unskilled, sedentary jobs that person could perform if limited to sedentary work. *See id*. The VE listed three different jobs. *See id*. at 745-46.

The ALJ next asked the VE whether, setting aside the first two hypothetical questions, a person who needed at least one extra unscheduled 15-minute break daily would be employable. *See id*. at 746. The VE testified that the person would not be. *See id*. The ALJ then inquired whether it would be a problem if, in addition to regular breaks, a person was off-task more than 10 percent of the workday, which would equate to more than the five-minute hourly break. *See id*. The VE stated that there would be no unskilled work for a person off-task more than 10 percent of the workday. *See id*. at 746-47. The ALJ then asked about the impact of more than two consistent absences a month, whether arriving late, leaving early, or missing work altogether. *See id*. at 747. The VE testified that the person would not be employable if absent more than once a month in an unskilled position. *See id*. The ALJ asked for clarification whether the same would be true if the absences were late or early departures instead of no-shows; the VE stated that such absences more than twice a month would preclude unskilled work. *See id*.

The following colloquy then occurred:

Q   . . . And with the jobs that . . . you provided, if someone needed the ability to change positions hourly for five minutes, again assume that the alternative position, they're on task, that the job would allow it, would the mail sorter, packager, assembler, inspector, table worker, and document preparer, would that have any significant impact if every hour they needed to change positions for the five minutes?

A   So they would need to get up, but they could still maintain on task?

Q   They would.

A   No. The jobs would remain.

4

*Id*. at 747-48.

The plaintiff contends that the ALJ's reliance on the VE's testimony was misplaced because the ALJ did not make clear that the ability to change positions hourly for five minutes was in addition to the need for an hourly five-minute break with no impact on satisfying daily production expectations. *See* Statement of Errors at 19-21. He argues that "both the ALJ's phrasing of the question and [the VE's] question seeking clarification in response appear to indicate that she understood the need for an hourly five-minute position change was posed by the ALJ as a possible substitution for the earlier hypothetical limitation requiring 'an hourly five minute break with no impact on satisfying daily production expectations' rather than an additional limitation." *Id*. at 20 (quoting Finding 5, Record at 673). He adds that, if the VE did understand the final hypothetical question to include both limitations, that "would appear to be inconsistent with her testimony that if a hypothetical individual would be off-task 'more than 10% of the workday' or 'six or more minutes of every hour' 'in an unskilled position, a person would not be employable in the local or national economy.'" *Id*. (quoting Record at 746-47).

The plaintiff's interpretation is strained. As the commissioner argues, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 3-4, the ALJ made reasonably clear, and the VE seemingly understood, that the final hypothetical question built on the original one. In turn, her response based on that understanding was entirely compatible with her earlier testimony that a person who was off-task more than 10 percent of the workday or six or more minutes of every hour in an unskilled position would be unemployable. The ALJ made clear that, in changing positions for five minutes every hour, the hypothetical individual would remain *on task*.

Remand, accordingly, is unwarranted on the basis of the first point of error.

### B. Challenge to Weighing of Opinion Evidence

The plaintiff next challenges the ALJ's weighing of the opinion evidence of record, asserting that he erred in according less weight to the opinions of treating physician's assistant Alison Welsh Jankowski, PA-C, and agency examining consultants Robert N. Phelps Jr., M.D., and Donna M. Gates, Ph.D., than to those of agency nonexamining consultants. *See* Statement of Errors at 21-23.[2]  I find no reversible error.

The plaintiff contends that the ALJ erroneously:

1.  Discounted the Jankowski, Phelps, and Gates opinions, as well as the plaintiff's subjective allegations, on the basis of his failure to obtain additional testing or treatment prior to his DLI without considering evidence that he lacked the health insurance or money to obtain such care, in violation of Social Security Ruling 16-3p (SSR 16-3p), *see id.* at 22; SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) (the commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints");

2.  Failed to read PA-C Jankowski's opinion in conjunction with her treatment record of the same date, September 9, 2014, *see* Statement of Errors at 22-23;

3.  Relied on a purported inconsistency between Dr. Phelps' 2014 opinion and his 2013 opinion without acknowledging that Dr. Phelps reviewed his 2013 examination findings at the time of his 2014 examination and, thus, provided his 2014 examination with both in mind, *see id.* at 23; and

---

[2] "Alison Welsh, PA," to whom the ALJ refers, *see* Record at 679, is the same person as "Alison Welsh Jankowski, PA-C," to whom both the plaintiff and the commissioner refer, *see* Statement of Errors at 6; Opposition at 7 & n.5.

   4.  Failed to consider his need for an assistive device for ambulation although the same was noted by both Dr. Phelps and an agency nonexamining consultant. *See id*.

  On the first point, the ALJ did not cite limited treatment as a basis for discounting either the Gates or Phelps opinions. *See* Record at 675-76, 678-79.[3] He did give limited weight to a September 2014 opinion of PA-C Jankowski that the plaintiff could not "hold down a full-time position because of his anxiety and depression" in part because of "a history of conservative treatment[,]" *id*. at 677, and limited weight to her "more detailed assessment of the [plaintiff]'s functional limitations" in September 2014 in part because the plaintiff had received "a limited amount of treatment for his gastrointestinal disorder[,]" *id.* at 679 (citation omitted).

  The plaintiff cites a March 2015 treatment record indicating that he was restarted on medications for anxiety and insomnia for the first time since the fall of 2014 after losing his home, being denied Social Security disability benefits, and having "'no money for meds[,]'" Statement of Errors at 14 (quoting Record at 655), and a January 2016 treatment note indicating that he had been "'[l]iving in [a] garage at his mother[']s house[,]'" had "'applied for carepartners[,]'" and that the "'[c]ost of medicines is an issue[,]'" *id*. at 15 (quoting Record at 1186). He asserts that, while the ALJ noted these issues, he did not address whether they prevented him from obtaining additional testing or treatment prior to his DLI, as required by SSR 16-3p. *See id*. at 22.

  Nonetheless, as the commissioner contends, *see* Opposition at 10-13, any error is harmless, *see Vito S. S. v. Saul*, No. 2:18-cv-00229-GZS, 2019 WL 2578077, at *3 (D. Me. June 24, 2019) (rec. dec., *aff'd* July 15, 2019) (error in failing to consider claimant's ability to afford treatment,

---

[3] The ALJ deemed Dr. Gates' 2013 examination findings, "*combined with the rest of the evidence that shows conservative treatment* and unremarkable objective findings, . . . consistent with" his mental RFC determination. Record at 675-76 (emphasis added). He, thus, did not *discount* her findings on the basis of conservative treatment. However, to the extent that the plaintiff challenges the ALJ's mention of his conservative treatment in this context, I find no reversible error for the reasons discussed below.

as required by SSR 16-3p, harmless when ALJ "identified multiple reasons for her assessment of the plaintiff's subjective allegations" that were either "unchallenged" or "survive[d] scrutiny"). In this case, as in *Vito S. S.*, the ALJ discounted the 2013 Gates opinion and each of the two Jankowski opinions on several additional bases, *see* Record at 675-77, 679, only one of which the plaintiff separately challenges, *see* Statement of Errors at 22-23, unsuccessfully for the reasons discussed below.[4] For the same reason, any error in discounting the plaintiff's subjective allegations on the basis of conservative treatment is harmless. The ALJ supplied multiple reasons for doing so, including those set forth in his related discussion of the opinion evidence of record. *See* Record at 674-78.

Turning to the second point – that the ALJ failed to read PA-C Jankowski's opinion in conjunction with her treatment note of the same date, *see* Statement of Errors at 22-23, the relevant portions of that note merely restate, without meaningful elaboration, PA-C Jankowski's opinion that the plaintiff was unable to work, *see* Record at 653 (stating, in relevant part, "I do not think [the plaintiff] is capable of being able to hold down a full time position based on his anxiety/depression [symptoms][,]" his diarrhea "[w]ould inhibit [his] ability to be functi[o]nal at a full time job[,]" and his lumbar sprain or strain "would certainly limit [his] ability to perform any physical labor positions"). As the commissioner persuasively argues, "[t]he mere fact that

---

[4] The ALJ discounted Dr. Gates' 2013 opinion on the bases that it was "vague" and did "not provide a specific function-by-function assessment of the [plaintiff]'s limitations" and that, while Dr. Gates stated that the plaintiff's "anxiety might negatively impact his abilities," she did not "outline the extent of that impact." Record at 676. The ALJ discounted PA-C Jankowski's opinion that the plaintiff could not hold down a job on the additional bases that it was "vague[,] did "not provide a specific breakdown of the [plaintiff]'s functional limitations[,]" and was inconsistent with "generally unremarkable objective findings[,]" *id.* at 677 (citations omitted), and her RFC opinion on the additional bases that "[m]any of the statements within this opinion appear to be written in the first person, which suggests that the [plaintiff] himself completed these sections[,]" "the underlying treatment records" were "inconsistent with many" of PA-C Jankowski's restrictions, the plaintiff's "lumbar findings appear[ed] generally normal other than some noted lumbar tenderness[,]" and the plaintiff had few "objectively observable symptoms affecting his upper or lower extremities[,]" *id.* at 679 (citation omitted).

8

Ms. Jankowski made all these statements on the same day does not entitle them to greater weight." Opposition at 13.[5]

Nor is remand warranted on the basis of the third point. The commissioner persuasively argues that, regardless of whether the ALJ acknowledged that Dr. Phelps reviewed his 2013 opinion in crafting his 2014 opinion, he supportably deemed the 2014 opinion inconsistent with the totality of the evidence, including Dr. Phelps' own 2014 examination showing improvement in physical functioning since his 2013 examination. *See* Opposition at 6; Record at 678-79.

Turning to the fourth and final point – that the ALJ failed to consider a need for an assistive device for ambulation although the same was noted in 2013 by Dr. Phelps, *see* Record at 558, and in 2013 by an agency nonexamining consultant (Benjamin Weinberg, M.D.), *see id*. at 133, 135 – any error is harmless. As the commissioner observes, *see* Opposition at 17, the ALJ explained that, despite the plaintiff's allegations, "treatment notes d[id] not outline any significant symptoms in his lower extremities or gait based abnormalities[,]" Record at 678 (citations omitted). The ALJ also gave significant weight to the opinion of agency nonexamining consultant Donald Trumbull, M.D., who noted that the plaintiff did not use an assistive device at his 2014 examination by Dr. Phelps and that the RFC statement signed by the plaintiff and PA-C Jankowski stated that a cane was not medically necessary for the plaintiff to ambulate. *See id*. at 148-49, 619, 634, 638, 679. While the ALJ also accorded significant weight to the Weinberg opinion without recognizing that Dr. Weinberg had indicated the need for an assistive device, he explained that the record supported no further limitations than found by Dr. Trumbull. *See id*. at 679-80. Finally, as discussed above, the ALJ supportably discounted the Phelps opinion.

---

[5] At oral argument, the plaintiff's counsel contended that PA-C Jankowski's contemporaneous note tends to undercut the ALJ's finding that the plaintiff might have filled out her RFC opinion. Yet, the above-quoted statements do not undercut the ALJ's finding that "[m]any of the statements within this opinion *appear to be written in the first person*, which suggests that the [plaintiff] himself completed these sections." Record at 679 (emphasis added).

9

Remand, accordingly, is unwarranted on the basis of the second point of error.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of December, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge